TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief
ALISON C. FINNEGAN, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0500; Fax: (202) 305-0275

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) CASE NO. 4:18-cv-03197-SBA |
| MICHAEL S. REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, et al., | ) ) ) **SECOND STIPULATED PARTIAL** ) **SETTLEMENT AGREEMENT AND** ) **ORDER** |
| Defendants, | ) ) |
| and | ) ) |
| CROPLIFE AMERICA, | ) ) |
| Intervenor-Defendant. | ) ) ) |

1

This Stipulated Partial Settlement Agreement ("Agreement") is entered into by and between Plaintiffs Center for Environmental Health, Center for Biological Diversity, and Californians for Pesticide Reform ("Plaintiffs"); Defendants Michael S. Regan, in his official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), the EPA (collectively, "the EPA Defendants"); and Intervenor-Defendant CropLife America ("CropLife") (collectively, "the Parties"), who state as follows:

WHEREAS, on January 18, 2017, EPA submitted to the U.S. Fish and Wildlife Service ("FWS") a nationwide biological evaluation regarding the effects of malathion and two other active ingredients on species listed as threatened or endangered under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*., and their designated critical habitats and requested initiation of consultation pursuant to ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2) ("the Malathion Consultation");

WHEREAS, the Malathion Consultation has been ongoing since that date;

WHEREAS, Plaintiffs filed this case in May 2018 (Dkt. No. 1);

WHEREAS, Plaintiffs first amended the complaint on July 25, 2018 (Dkt. No. 18), and then filed a Second Amended Complaint pursuant to leave of Court on November 27, 2018 (Dkt. No. 43);

WHEREAS, the claims in the Second Amended Complaint are as follows: in Count 1, Plaintiffs allege that FWS has failed to comply with its procedural duties under ESA Section 7(a)(2) and EPA has failed to comply with its substantive and procedural duties under ESA Section 7(a)(2) by taking final agency actions of registering or reregistering certain products containing malathion in paragraph 84 of the Second Amended Complaint; in Count 2, pursuant to Section 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), Plaintiffs allege that, related to the registration review for all malathion products, FWS has unlawfully withheld and/or unreasonably delayed completion of its biological opinion for the Malathion Consultation under ESA Section 7(a)(2), and EPA has unlawfully withheld and/or unreasonably delayed completion of its procedural and substantive duties under ESA Section 7(a)(2); and in Count 3, Plaintiffs allege that EPA has violated ESA Section 7(d), 16 U.S.C. § 1536(d), through

an "irreversible and irretrievable commitment of resources that has the effect of foreclosing the implementation of reasonable and prudent alternative measures" related to the Malathion Consultation (Dkt. No. 43);

WHEREAS, twice during the course of the ongoing consultation, FWS requested that both EPA and the technical registrants (which produce malathion products that are used solely to manufacture or formulate other pesticide products) of the products under review agree to extend the ongoing ESA consultation pursuant to ESA Section 7(b), 16 U.S.C. § 1536(b), and both EPA and the technical registrants gave their written consents;

WHEREAS, on April 13, 2021, FWS provided a draft biological opinion ("Draft Biological Opinion") for malathion to EPA;

WHEREAS, EPA then made the Draft Biological Opinion available to the public on its website for a 60-day comment period, which closed on June 19, 2021;

WHEREAS, the Draft Biological Opinion included "general categories" of the reasonable and prudent alternatives ("RPAs") that FWS would consider prior to finalizing the biological opinion ("Final Biological Opinion") for malathion and completing the consultation, which would be tailored to the needs of specific species and critical habitat in order to avoid the likelihood of jeopardy and destruction and adverse modification, *see* 50 C.F.R. § 402.15(g);

WHEREAS, according to the most recent extension request, FWS anticipates issuance of the Final Biological Opinion no later than February 28, 2022;

WHEREAS, in light of the anticipated completion of the Final Biological Opinion, EPA and FWS filed a motion for stay of proceedings on April 13, 2021 (Dkt. No. 83);

WHEREAS, on May 18, 2021, Plaintiffs filed a motion for summary judgment, seeking an order "requiring EPA to complete its nationwide consultation on registration review of malathion by the date it has recently committed to, February 28, 2022 and implement any measures necessary to avoid jeopardy within six months thereafter" (Dkt. No. 95);

WHEREAS, the Court entered an order on May 20, 2021, referring this lawsuit to a settlement conference before Magistrate Judge Thomas S. Hixson and holding in abeyance the pending motion for stay of proceedings and motion for summary judgment (Dkt. No. 98);

3

1  WHEREAS, the Parties and FWS, through their authorized representatives, separately
2  negotiated a stipulated partial settlement agreement with regard to claims against EPA,
3  Administrator Regan, FWS, and Debra Haaland, Secretary of the U.S. Department of the
4  Interior, without any admission of the allegations or claims, for the alleged violation of their
5  procedural duties concerning completion of the Final Biological Opinion pursuant to ESA
6  Section 7(a)(2) in Counts 1 and 2 set forth in Plaintiffs' Second Amended Complaint;

7  WHEREAS, pursuant to EPA's October 2017 Directive Promoting Transparency and
8  Public Participation in Consent Decrees and Settlement Agreements, the stipulated partial
9  settlement agreement was published in the Federal Register on October 18, 2021 for a thirty-day
10 comment period, final approvals of the stipulated partial settlement agreement were obtained in
11 December 2021, and the stipulated partial settlement agreement was filed with the Court and
12 approved on January 4, 2022 (Dkt. Nos. 111, 112);

13 WHEREAS, although the EPA Defendants and CropLife do not admit any of the
14 allegations or remaining claims set forth in Plaintiffs' Second Amended Complaint, the Parties,
15 through their authorized representatives, have reached a stipulation with regard to the remaining
16 claims against the EPA Defendants  for the alleged failure to comply with their substantive
17 duties under ESA Section 7(a)(2) by taking final agency actions of registering or reregistering
18 certain products containing malathion in paragraph 84 of the Second Amended Complaint as set
19 forth in Count 1; the alleged unlawful withholding and/or unreasonable delay pursuant to Section
20 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), of completion of their
21 substantive duties under ESA Section 7(a)(2) as set forth in Count 2; and the alleged violations
22 of ESA Section 7(d), 16 U.S.C. § 1536(d), as set forth in Count 3, that they believe is in the
23 public interest and consider to be a just, fair, adequate, and equitable resolution of all remaining
24 claims set forth in Plaintiffs' Second Amended Complaint;

25 WHEREAS, using its best efforts, EPA intends to implement and/or carry out actions
26 identified as reasonable and prudent measures ("RPMs") in the Incidental Take Statement
27 ("ITS") accompanying the Final Biological Opinion, if any, necessary to minimize the impacts
28 of any incidental take that is anticipated to result from the agency action described in the Final

4

Biological Opinion. The RPMs in the ITS, and EPA's intention to use its best effort to implement the RPMs are separate and distinct from any RPAs that may be included in the Final Biological Opinion and from any commitment set forth in Paragraph 1 herein;

WHEREAS, the terms of the Agreement set forth below represent the EPA Defendants' good faith effort to resolve the remaining claims in this case as set forth above, even though the Malathion Consultation is ongoing and, at this time, EPA does not yet know the complete content of the Final Biological Opinion, including but not limited to, the content of any RPMs in the ITS or whether the Final Biological Opinion will contain RPAs, as the term RPAs is defined by 50 C.F.R. § 402.02;

THEREFORE, the Parties stipulate and agree to the following:

1. EPA will implement the Final Biological Opinion, including but not limited to any RPAs, no later than 18 months from the date that FWS issues the Final Biological Opinion. Implementation will include, but is not limited to, providing written notice no later than 60 calendar days from the issuance of the Final Biological Opinion to all registrants of products containing malathion ("malathion registrants") of the issuance of the Final Biological Opinion, as well as any actions the malathion registrants must take (including to require submission of requests to amend labeling or terms and conditions of registration) unless one of the contingencies set out in sub-paragraphs (a) through (d) occurs, in which case the timeframe set forth above shall be extended as set out in sub-paragraphs (a) through (d) below:

   a. if implementation of the Final Biological Opinion as described in Paragraph 1, including but not limited to any RPAs, would result in the need for a longer timeframe than that set forth in this Agreement and FWS finds that the longer period is appropriate and states so in the Final Biological Opinion, then EPA will provide notice to the Parties no later than 7 calendar days following issuance of the Final Biological Opinion, and the Parties will meet and confer (telephonically or in person) within 14 calendar days thereafter for the purpose of EPA advising the time period it will require to implement the Final Biological Opinion in an effort to obtain the Parties' agreement on an extended timeframe for implementation;

      b.    if there is a lapse in federal appropriations, requiring EPA to suspend work until government operations are restored, then the timeframe set forth above will be extended by an equal number of work days;

      c.    if the Final Biological Opinion includes one or more RPAs that EPA was not expecting based on its communications with FWS prior to issuance of the Final Biological Opinion, and EPA cannot implement such RPA(s) within the timeframe set forth above, then EPA will provide notice to the Parties no later than 7 calendar days following issuance of the Final Biological Opinion, and the Parties will meet and confer (telephonically or in person) within 14 calendar days for the purpose of EPA advising the time period it will require to implement such RPA(s) in an effort to obtain the Parties' agreement on an extended timeframe for implementation of such RPA(s);

      d.    if an unforeseen and unavoidable event, such as a natural disaster or unavoidable legal barrier or restraint, including those arising from actions of persons or entities that are not party to this Agreement, occurs that significantly disrupts the work of EPA to implement the Final Biological Opinion no later than 18 months from the date that the Final Biological Opinion is issued, then EPA will provide notice to the Parties within 14 calendar days of the event, and the Parties will meet and confer (telephonically or in-person) within 14 calendar days thereafter for the purpose of EPA advising the number of additional days it will require to address the unforeseen and unavoidable event in an effort to obtain the Parties' agreement on a timeframe for extending the timeframe set forth above to address the pertinent issues.

If (a), (c) or (d) occur and the Parties are unable to reach an agreement on extending the timeframe for implementation, EPA shall file a motion for relief from the terms of this Agreement with the Court, for good cause shown.

    2.    Implementation of the Final Biological Opinion in accordance with Paragraph 1 of this Agreement, will include, but is not limited to, notifying affected malathion registrants within 60 calendar days of issuance of the Final Biological Opinion as to any necessary modifications of their product labeling or any other terms and conditions of registration.  If that

notification identifies any necessary modifications of a malathion registrant's product labeling or any other term or condition of registration, EPA's notice shall provide each such registrant with 60 calendar days from the date of receipt of such notice in which to submit their request for labeling or registration amendments. Implementation shall further include EPA's approval, within the timeframe established in Paragraph 1, of any labeling and/or registration amendments submitted by registrants in conformance with EPA's notice to registrants described in this paragraph.

3. EPA shall provide status reports to the Court regarding the implementation of the terms of the Final Biological Opinion and Settlement Agreement beginning three months from issuance of the Final Biological Opinion, and for every three months thereafter until the end of the 18 month implementation timeframe set forth in Paragraph 1 or, if the implementation timeframe is extended based on any of the contingencies outlined in Paragraph 1(a) through (d) of the Agreement, until the end of the extended timeframe.

4. Plaintiffs agree not to bring, assist any other party in bringing, or join EPA or any other party in any court proceeding against EPA or any state agency that concerns an alleged procedural or substantive violation of Section 7 of the ESA pertaining to the effects of malathion on species or critical habitat covered by the Final Biological Opinion resulting from a particular malathion product, if: (a) the registrant of that product has timely submitted a request for labeling and/or registration amendments reflecting modifications or provisions deemed necessary by EPA to implement the Final Biological Opinion; (b) the registrant of that product has implemented EPA's requested label changes in accordance with normal EPA and state procedures after EPA or a state approves the requested changes; and (c) the registrant of that product is then in compliance with all registration amendments requested by EPA in its notice.  For the purposes of item (a) in this paragraph above, requests to EPA shall be deemed timely if submitted in accordance with Paragraph 2 and requests to states shall be deemed timely if submitted within 30 days of receipt from EPA of approval of labeling and/or registration amendments.  Any prohibition created by this paragraph will terminate two years from the end of the time period for

implementation set forth in Paragraph 1 and does not limit Plaintiffs' ability to dispute the adequacy of the Final Biological Opinion.

5. Notwithstanding the terms of this Agreement, following issuance of the Final Biological Opinion, EPA retains the discretion to conduct its responsibilities as the Federal agency as set forth in 50 C.F.R. § 402.15. Pursuant to 50 C.F.R. § 402.15(a), following issuance of the Final Biological Opinion, EPA shall determine whether and in what manner to proceed with its action in light of its Section 7 obligations and the Final Biological Opinion, and will provide notice to the Parties of its determination no later than 10 calendar days after issuance of the Final Biological Opinion. Pursuant to 50 C.F.R. § 402.15(b), if a jeopardy biological opinion is issued, EPA shall notify FWS in writing of its final decision on the action, including whether it intends to implement any RPAs, no later than 10 calendar days following issuance of the Final Biological Opinion, and provide to the Parties copies of its notification to FWS no later than 7 calendar days thereafter.

6. This Agreement may be modified by the Court upon good cause shown by (a) written stipulation between the Parties filed with and approved by the Court, or (b) upon written motion filed by one of the Parties and granted by the Court.  In the event that any Party seeks to modify the terms of this Agreement, including the deadline specified in Paragraph 1, or in the event of a disagreement between the Parties concerning any aspect of this Agreement, or in the event that any Party believes that another Party has failed to comply with any term or condition of this Agreement, the Party seeking the modification, raising the dispute, or seeking enforcement shall provide the other Party with notice of the claim.  The Parties agree that they will meet and confer (telephonically or in-person) at the earliest possible time in a good-faith effort to resolve the claim before seeking relief from the Court.  If the Parties are unable to resolve the claim themselves, any Party may seek relief from the Court.  In the event that Plaintiffs believe EPA has failed to comply with a term of this Agreement and have not sought to modify it, Plaintiffs' first remedy shall be a motion to enforce the terms of this Agreement.  No Party shall institute a proceeding for contempt of court unless EPA is in violation of a separate order of the Court resolving a motion to enforce the terms of the Agreement.

7.	Upon the Court's entry of this Agreement and incorporation of this Agreement into the Court's order, the remaining claims in Counts 1, 2 and 3 against the EPA Defendants shall be dismissed with prejudice as set forth in the proposed form of Order.  Notwithstanding the dismissal of the claims, the Parties hereby stipulate and respectfully request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement, to resolve any motions to modify such terms until EPA satisfies its obligations under the Agreement, and to resolve any motion for costs of litigation (including reasonable attorney and expert witness fees), if necessary. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994).  The EPA Defendants, FWS, and Secretary Haaland reserve their right to oppose any such motion.

8.	The Parties agree that Paragraph 7 does not extend the Court's jurisdiction to hear any dispute over the adequacy of the Final Biological Opinion that FWS is preparing or any decision by EPA to rely on, or the manner in which it implements, the Final Biological Opinion. The Parties agree that any such challenge must be brought through a new judicial action and/or any applicable agency administrative process, to the extent otherwise permissible under law and this Agreement and that any such challenge is not precluded by this Agreement.

9.	No provision of this Agreement shall be interpreted as, or constitute, a commitment or requirement that EPA take action in contravention of the ESA, its implementing regulations, the APA, or any other law or regulation, either substantive or procedural. Nothing in this Agreement shall be construed to limit or modify the discretion accorded to EPA by the ESA, its implementing regulations, the APA, or general principles of administrative law with respect to the procedures to be followed in making any determination required herein, or as to the substance of any final determination. The EPA Defendants reserve the right to raise any applicable claims or defenses to such challenges.

10.	Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that EPA take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other appropriations law. In response, Plaintiffs assert that this Agreement does not create a conflict with the Anti-Deficiency Act because the ESA Section 7(a)(2) consultation duties are in non-discretionary terms and the Anti-Deficiency Act would not excuse compliance

9

with a pre-existing court-approved settlement agreement. Plaintiffs intend to assert this position if EPA fails to comply with the terms of this Agreement.

11. The Parties agree that this Agreement was negotiated in good faith and that it constitutes a partial settlement of claims disputed by the Parties that resolves all remaining claims in this lawsuit. By entering into this Agreement, the Parties do not waive any legal rights, claims, or defenses except as expressly stated herein. This Agreement and the Parties' prior Stipulated Partial Settlement Agreement, which was approved by the Court on January 4, 2022 (Dkt. No. 112), contain all of the terms of the agreements among the Parties. The terms contained in this Agreement are intended to be the final and sole agreement between the Parties with respect to the settlement of issues set out herein. The Parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement or the Parties' prior Stipulated Partial Settlement Agreement, whether written or oral, are of no further legal or equitable force or effect.

12. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the Court's entry of the terms and conditions of this Agreement and do hereby agree to the terms herein.

13. It is hereby expressly understood and agreed that this Agreement was jointly drafted by the Parties. Accordingly, the Parties hereby agree that any and all rules of construction, to the effect that ambiguity is construed against the drafting party, shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of the Agreement.

14. This Agreement is the result of compromise and settlement, and does not constitute an admission, implied or otherwise, by the Parties to any fact, claim, or defense on any issue in this litigation. No part of this Agreement shall have precedential value or be used as evidence in any pending or future litigation or administrative action or in representations before any court or forum or in any public setting except to enforce the terms of this Agreement. No party shall use this Agreement or the terms herein as evidence of what does or does not constitute a reasonable timeline for implementing the RPAs or any other term, condition, or requirement set forth in any biological opinion.

15. Any notice required or made with respect to this Agreement shall be in writing and shall be effective on the date that notice is delivered by electronic mail. For any matter relating to this Agreement, the contact persons are:

    a.     For Plaintiffs –

        Jonathan Evans (jevans@biologicaldiversity.org)
        Stephanie Parent (sparent@biologicaldiversity.org)
        Center for Biological Diversity
        1212 Broadway
        Suite 800
        Oakland, CA 94612
        Tel: (510) 844-7118
        Cell: (213) 598-1466

    b.     For Defendants –

        Alison C. Finnegan (alison.c.finnegan@usdoj.gov)
        U.S. Department of Justice
        Environment & Natural Resources Division
        Wildlife & Marine Resources Section
        Ben Franklin Station
        P.O. Box 7611
        Washington, DC 20044-7611
        Tel: (202) 305-0500

    c.     For Intervenor-Defendant CropLife –

        David B. Weinberg (dweinberg@wiley.law)
        Hume M. Ross (hross@wiley.law)
        Wiley Rein LLP
        2050 M Street NW
        Washington, DC 20036
        Tel: (202) 719.7000

16. The terms of this Agreement shall become effective upon entry by the Court and incorporation of this Agreement into the Court's order. The date of the Court's order effectuating this Agreement shall be the date that governs the timeframe for any motion that Plaintiffs may file for costs of litigation (including reasonable attorney and expert witness fees), if Plaintiffs, the EPA Defendants, FWS, and Secretary Haaland are unable to resolve costs and fees without the Court's assistance. The EPA Defendants, FWS, and Secretary Haaland reserve their right to oppose any such motion.

1       The undersigned Parties hereby consent to the form, substance and entry of the foregoing Agreement.

      Respectfully submitted this 7th day of April, 2022.

| | |
|---|---|
| /s/   Jonathan Evans (with permission) | TODD KIM |
| Stephanie Parent | Assistant Attorney General |
| Center for Biological Diversity | Environment & Natural Resources Division |
| P.O. Box 11374 | SETH M. BARSKY, Chief |
| Portland, OR 97211-0374 | MEREDITH L. FLAX, Assistant Chief |
| Tel: 971-717-6404 | |
| | /s/  Alison C. Finnegan |
| Jonathan Evans | ALISON C. FINNEGAN, Trial Attorney |
| Center for Biological Diversity | U.S. Department of Justice |
| 1212 Broadway Street, Suite 800 | Environment & Natural Resources Division |
| Oakland, CA 94612 | Wildlife & Marine Resources Section |
| Tel: 510-844-7100, ext. 318 | Ben Franklin Station |
| jevans@biologicaldiversity.org | P.O. Box 7611 |
| | Washington, DC 20044-7611 |
| | Tel: (202) 305-0500 Fax: (202) 305-0275 |
| *Counsel for Plaintiffs* | *Counsel for Federal Defendants* |

WILEY REIN LLP

/s/   David B. Weinberg  (with permission)
David B. Weinberg (DC Bar No. 186247)*
dweinberg@wiley.law
2050 M Street NW
Washington, DC 20036
Telephone: (202) 719-7000
Fax: (202) 719-7049
*admitted pro hac vice
*Counsel for Intervenor-Defendant CropLife America*

**ORDER**

On April 7, 2022, the parties submitted a Second Stipulated Partial Settlement Agreement ("Agreement") in the above captioned case. Good cause having been shown, the Agreement is entered and the terms contained therein are incorporated in this Order.

Pursuant to Paragraph 1 of the Agreement, it is hereby ORDERED that the U.S. Environmental Protection Agency ("EPA") will implement the Final Biological Opinion, including but not limited to any reasonable and prudent alternatives ("RPAs"), as that term is defined by 50 C.F.R. § 402.02, regarding the effects of malathion on species listed as threatened or endangered under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and their designated critical habitats no later than 18 months from the date that the Final Biological Opinion is issued, unless one of the contingencies outlined in Paragraph 1(a) through (d) of the Agreement occurs. As set forth in Paragraph 1 and 2 of the Agreement, implementation will include, but is not limited to, providing written notice no later than 60 calendar days from the issuance of the Final Biological Opinion to all registrants of products containing malathion of the issuance of the Final Biological Opinion, as well as any actions they must take (including to require from all then-existing registrants of products containing the active ingredient malathion, submission of updated labels and labeling or terms and conditions of registration), and approving any labeling and/or registration amendments submitted by registrants in conformance with EPA's notice to registrants within the timeframe in Paragraph 1.

It is further ORDERED that EPA shall provide status reports to the Court regarding the implementation of the terms of the Final Biological Opinion and Settlement Agreement beginning three months after issuance of the Final Biological Opinion, and for every three months thereafter until the end of the 18 month implementation timeframe set forth in Paragraph 1 or, if the implementation timeframe is extended based on any of the contingencies outlined in Paragraph 1(a) through (d) of the Agreement, until the end of the extended timeframe.

It is further ORDERED that any remaining claims in Counts 1, 2, and 3 of the Second Amended Complaint are hereby dismissed with prejudice.

Notwithstanding the dismissal of claims, this Court shall retain jurisdiction to oversee compliance with the terms of this Agreement, to resolve any motions to modify such terms, until EPA satisfies its obligations under the Agreement as set forth in Paragraphs 1 and 2, and to resolve any motion for costs of litigation (including reasonable attorney and expert witness fees), if necessary. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994).

**IT IS SO ORDERED.**

Dated: April 13, 2022

                                                                      *[signature]* RS
                                                Richard Seeborg for Saundra Brown Armstrong
                                                United States District Judge